# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

**LEE LUCAS**                    *    **CIVIL ACTION NO.  16-0425**

**VERSUS**                       *    **JUDGE ELIZABETH E. FOOTE**

**JERRY GOODWIN ET AL.**         *    **MAG. JUDGE KAREN L. HAYES**

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are three motions for summary judgment, [docs. # 26, 38, and 40]. Plaintiff filed the first motion for summary judgment, followed by defendant, Dr. Daniel Judd Moore, and then defendants, Jerry Goodwin, James LeBlanc, Paula Milwee, Robert Rachal, and Rahman Singh. Dr. Moore filed an opposition to plaintiff's motion for summary judgment [doc #34], as did the remaining defendants [doc #35]. Plaintiff has not responded to either of the defendants' motions for summary judgment. For reasons set forth below, it is recommended that plaintiff's motion be **DENIED**, that Dr. Moore's motion be **GRANTED**, and that the remaining defendants' motion be **GRANTED**.

## Background

*Pro se* Plaintiff, Lee Lucas, an inmate in the custody of the Louisiana State Penitentiary ("LSP"),  filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on March 29, 2016 [doc. #1]. He was previously confined at the David Wade Correctional Center ("DWCC"), and complains about the dental care he received from Dr. Moore, a dentist at DWCC, and other prison staff over the course of several years while incarcerated at the DWCC.

In January 2012, plaintiff was transferred from Elayn Hunt Correctional Center ("EHCC") to DWCC. In connection with his intake procedure at DWCC, plaintiff filed a request

for medical treatment form dated January 17, 2012. Plaintiff complained of "dental problems with two teeth." Three weeks later, plaintiff filed another request for medical treatment form stating that he needed to see a dentist because he had an abscessed tooth and a compromised crown. On March 13, 2012, plaintiff filed an administrative remedy procedure ("ARP") request (No. DWCC-2012-0356) ("ARP 356") complaining that he had been at DWCC two months without being examined by a dentist.

Dr. Moore saw plaintiff on March 18, 2012.  Dr. Moore found no dental infection on examination or through the panoramic x-ray. Dr. Moore diagnosed plaintiff with probable maxillary sinusitis (i.e., sinus infection) and prescribed an antibiotic for possible infection, Dramamine for the sinusitis, and Tylenol for pain. During the visit, plaintiff requested that Dr. Moore replace all his bridge work. Dr. Moore noted that there was "no apparent reason" to do so.

On April 13, 2012, DWCC responded to plaintiff's ARP 356 by denying the requested relief.  Approximately two weeks later, plaintiff notified DWCC that he wished to proceed to step two in the ARP process.  On June 8, 2012, DWCC issued a step two denial of plaintiff's ARP 356.

On June 13, 2012, plaintiff filed a request for medical treatment form complaining of a chipped tooth.  A week later, Dr. Moore examined plaintiff and found a possible fistula between teeth 11 and 12.  Dr. Moore prescribed antibiotics for treatment of maxillary sinusitis and Tylenol for pain.

On July 30, 2012, plaintiff filed a request for medical treatment form, in which he stated that he needed to see a dentist. On September 21, 2012, Dr. Moore examined plaintiff and diagnosed him with possible maxillary sinusitis. Dr. Moore noted that he saw no signs or symptoms of pain, swelling, or dental infection present.  He prescribed antibiotics, Dramamine,

and Tylenol.

In June 2013, plaintiff complained of possible abscessed tooth.  Dr. Moore examined plaintiff on June 20, 2013.  Dr. Moore diagnosed plaintiff with a fistula at tooth #11 or #12 and prescribed an antibiotic.

On March 24, 2015, plaintiff filed a request for medical treatment form, in which he stated that "the tooth you've been treating has gotten progressively worst [sic]." Plaintiff requested a root canal and stated he was in extreme pain.   Approximately a month later, Dr. Moore examined plaintiff.  Dr. Moore referred plaintiff to University Health - Shreveport ("UH-S") for evaluation of a non-vital bridge abutment, either tooth # 11 or #12.  Dr. Moore believed that oral surgery may be necessary. Dr. Moore had a telephone consult with Dr. Billy Cannon, the Plaintiff's prior dental provider. Dr. Moore noted that DWCC does not have the resources to provide a root canal and, if a surgery was necessary, recommended that DWCC get the Plaintiff to a surgical facility.

On June 26, 2015, Blake C. Garrett, DDS examined plaintiff at UH-S. Plaintiff complained of tooth pain, which was exacerbated by chewing. Dr. Garrett performed an oral examination, which revealed no swelling, lesions, or abscesses. Dr. Garrett recommended extraction of tooth #12, but plaintiff refused.

On August 23, 2015, plaintiff filed an ARP request (No. DWCC-2015-0808) ("ARP 808"). Plaintiff complained that he had not received appropriate dental care and that he had needed a root canal since February 2012.

On September 4, 2015, Dr Moore examined plaintiff and again referred the plaintiff to UH-S.  Dr. Moore noted that the tooth in question was non-vital. A week later, Caroline R. Sikes, DDS sent a letter to DWCC concerning her June 26, 2015 examination of plaintiff. Dr.

3

Sikes represented that the only treatment option they could provide was an extraction, which plaintiff refused.

On October 4, 2015, DWCC responded to ARP 808. Robert Rachal prepared the response stating that he found "nothing to substantiate your claim and no administrative intervention [was] needed in this matter." On October 7, 2015, plaintiff notified DWCC of his desire to pursue ARP 808 to the second step.

On October 13, 2015, plaintiff filed an ARP (No. DWCC-2015-0975) ("ARP 975") asserting that he needed a root canal as a result of an assault on him by LSP officials prior to plaintiff being transferred to DWCC. Plaintiff alleges that DWCC officials were conspiring with the LSP officials to conceal the assault at LSP by refusing to meet plaintiff's dental needs. On October 16, 2015, Tommy Garrett, DWCC's Executing Staff Officer, sent plaintiff a letter informing plaintiff that, pursuant to DWCC procedures, his ARP 975 would not be handled until after resolution of his previously pending ARP.

On October 30, 2015, Dr. Moore examined plaintiff. Dr. Moore noted that plaintiff had an open fistula. Dr. Moore further noted that plaintiff refused extraction and desired a root canal. Dr. Moore prescribed an antibiotic and an oral rinse. On December 4, 2015, plaintiff was examined by another dentist at DWCC. The dentist's noted that plaintiff had a fistula, but refused extraction.

On December 14, 2015, DWCC responded in step two of plaintiff's ARP 808, denying plaintiff's request for relief. Two months later, DWCC responded to plaintiff's ARP 975. Robert Rachal prepared the response, which provided that Mr. Rachal found "nothing to substantiate [plaintiff's] claim and no administrative intervention is needed in this matter.

A few day later, plaintiff filed a notice that he wished to proceed to step two with his

4

ARP 975.  Plaintiff's stated reason he wished to proceed to step two was that "[t]he findings aren't factual."

On March 29, 2016, plaintiff filed the instant case. Plaintiff asserts a single cause of action for denial of medical care. Plaintiff seeks both injunctive relief and monetary damages. First, plaintiff seeks an injunction directing defendants to transfer plaintiff to LSP and for immediate dental care upon such transfer.  Plaintiff seeks monetary relief in the form of a joint and several judgment of $100,000 against all defendants for "physical and emotional injuries," a joint and several judgment of $100,000 against all defendants for "failure to provide adequate medical/dental care," and punitive damages of $25,000 each against all defendants. The following month, Plaintiff was transferred from DWCC to the Louisiana State penitentiary.

On April 28, 2016, DWCC responded to plaintiff's request to proceed to step two in ARP 975, denying plaintiff's request for relief.

On July 5, 2017, Plaintiff filed the first motion for summary judgment. Dr. Moore filed his on August 4, 2017, and defendants, Jerry Goodwin, James LeBlanc, Paula Milwee, Robert Rachal, and Rahman Singh, filed their motion on August 7, 2017.  Dr. Moore filed an opposition plaintiff's motion for summary judgment [doc #34], as did the remaining defendants [doc #35]. Plaintiff has not responded to either of the defendants' motions for summary judgment. Plaintiff argues that the evidence attached to his motion proves defendants' deliberate indifference to his serious dental needs.  Dr. Moore argues that the undisputed facts establish that plaintiff was not denied adequate medical care and that plaintiff had failed to exhaust all administrative remedies. The other defendants argue that the undisputed facts establish that they are entitled to qualified immunity and that plaintiff was not denied adequate medical care. This matter is now before the Court.

5

I.      **Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.

In evaluating the evidence tendered by the parties, the Court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, No. 91-6197, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## II.    Plaintiff's Requests for Injunctive Relief Are Moot

Though not argued by any party, the undersigned has determined that plaintiff's requests for injunctive relief are moot. As noted, plaintiff is no longer incarcerated at DWCC and has been transferred to LSP. Thus, his transfer renders his prayer for injunctive relief moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (transfer from unit rendered prisoner's claims for declaratory and injunctive relief moot); *see also Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (same). The possibility that plaintiff may be transferred back to the offending institution "is too speculative to warrant relief." *Herman*, 238 F.3d at 665.

## III.    Defendants Failed to Prove That Lucas Did Not Exhaust Administrative Remedies

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the

administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 F. App'x. 933, 934 (5th Cir. 2009) (citing *Woodford, supra*). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, No. 08-10443, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See*, *e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 F. App'x. 564 (5th Cir. 2003).

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 F. App'x. 365 (5th Cir. 2007); *Simkins v. Bridges*, 350 F. App'x. 952, 953-54 (5th Cir. 2009); *Plaisance v. Cain*, 374 F. App'x. 560, 561 (5th Cir. 2010). Moreover, a prisoner is required to exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process. *Hicks v. Lingle*, 370 F. App'x. 497, 499 (5th Cir. 2010); *Ates v. St. Tammany Parish*, No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014). Furthermore, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps. *Id.* at *3 n. 10

(and cases cited therein); *see also Hicks, supra* (inmate required to proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied with first step response).

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

The uncontroverted evidence establishes that DWCC had a two-step ARP in effect during the relevant period. First, a prisoner must submit an ARP request form. DWCC reviews that form and issues a response. If the prisoner is not satisfied with the step one response, he may proceed to step two for an additional review.

During his time at DWCC, plaintiff initiated multiple ARPs. Dr. Moore claims he is not certain from which of plaintiffs ARPs this law suit arises. Dr. Moore states that this law suit appears to be continuation of ARP 975. Because plaintiff filed this law suit before DWCC issued its step two response in ARP 975, Dr. Moore argues, the court should dismiss plaintiff's claims for failure to exhaust administrative remedies. Upon reviewing the complaint, the documents attached to the motions and responses, and the record as a whole, it is clear that the instant law suit is a continuation of the grievance initiated in ARP 808. In his complaint, which was sworn to under penalty of perjury, plaintiff describes his compliance with DWCC's administrative remedy procedures. The dates plaintiff provides for the initiation the ARP, the denials, and his appeal to step two of the process match the dates of ARP 808. Dr. Moore did not submit evidence that would contradict this conclusion. Because Dr. Moore bears the burden of proof on the affirmative defense of failure to exhaust, the court concludes that Dr. Moore is not entitled to summary judgment on this ground.

**IV.    Lucas Was Not Denied Adequate Dental Care**

As a convicted inmate, plaintiff's claim for inadequate medical care is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment.  To establish liability, an inmate must adduce facts which "clearly evince" a serious medical need and the prison official's deliberate indifference to it.  *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285 (1976).

Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a prisoner means that:  (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur.  *Thompson v. Upshur County, Tx.*, 245 F.3d 447, 458-59 (5th Cir. 2001).   "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference."  *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."  *Thompson*, 245 F.3d at 459.  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).  "[A] delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

The evidence before the court establishes that defendants were not deliberately indifferent to plaintiff's dental needs.  Defendants did not refuse to treat plaintiff, did not ignore any of his complaints, did not intentionally treat him incorrectly, and did not engage in any

similar conduct that clearly evinced a wanton disregard for plaintiff's serious medical needs. The records submitted by the parties show that Dr. Moore examined plaintiff multiple times, prescribed him medication, and referred plaintiff for a surgical evaluation when he believed it was necessary. Plaintiff received a dental examination each time he requested.  Plaintiff has submitted no evidence that calls this conclusion into question.

While plaintiff requested and received multiple examinations in 2012-13, Dr.  Moore observed nothing more than sinusitis. Plaintiff has not submitted any evidence that would lead the court to distrust Dr. Moore's documented findings. It appears that plaintiff's dental problems temporarily resolved, then resurfaced in March 2015.  Following Dr. Moore's refferal of plaintiff to UH-S for possible oral surgery, a dentist at UH-S examined plaintiff.  The dentist at UH-S offered to extract plaintiff's offending tooth. Plaintiff declined and insisted upon a root canal. Numerous courts have considered this exact issue and have held that offering tooth extraction in lieu of a root canal does not violate a prisoner's Eighth Amendment rights. *See e.g., Mathews v. Raemisch*, 513 F. App'x 605, 607 (7th Cir. 2013) ("The district court correctly found that the prison is offering him an extraction procedure and that this dispute is over nothing but the choice of one routine medical procedure versus another. That is not enough to prove an Eighth Amendment claim of deliberate indifference."); *Ciaprazi v. Jacobson*, No. 13CIV4813PACKNF, 2016 WL 4619267, at *4 (S.D.N.Y. Sept. 6, 2016) ("But even if Ciaprazi's teeth could have been treated with root-canal therapy, it would not violate the Eighth Amendment for DOCCS to offer him only extraction. "); *Galindo v. Cate*, No. 11 Civ. 23, 2011 WL 6100623, at *3, *6 (E.D. Cal. Dec. 5, 2011) (screening order) (dismissing deliberate indifference claim against the dentists when they were not allowed to perform root canals in the California Department of Corrections system, but could extract the tooth). The undersigned finds the reasoning of these court's

persuasive.

Plaintiff has failed to present evidence that would satisfy the stringent standard for showing deliberate indifference; accordingly, defendants should be granted summary judgment with respect to plaintiff's claim that he received inadequate dental care.

## V.    Defendants Are Entitled To Qualified Immunity

When, as here, plaintiffs seek money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)).  The qualified immunity doctrine balances two often conflicting interests — "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citations omitted). In effect, qualified immunity "gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S. Ct. 1092 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense.  However, once raised by defendants, it devolves upon plaintiffs to negate the defense by showing that the officials' conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th

Cir.2008) (citation omitted). Plaintiff's burden is two-pronged. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). First, plaintiff must demonstrate that the defendant violated a constitutional right under current law. *Id.* "Second, [plaintiffs] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

For purposes of qualified immunity's first prong, the court observes that, "[t]o state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). Moreover, in order to plead a § 1983 cause of action, a plaintiff "must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Thus, a successful § 1983 claim "must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

Having already addressed the substance of plaintiff's Eighth Amendment claim, the undersigned likewise concludes that plaintiff failed to present any evidence that his Constitutional rights were violated, and certainly not deliberately so. Accordingly, the undersigned concludes, to the extent plaintiff asserts a claim against defendants in their

individual capacities, they are entitled to qualified immunity on those claims.

**IT IS RECOMMENDED** that the motions for summary judgment filed by defendants [docs. #38 and 40] be **GRANTED** and all plaintiff's claims against defendants should be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the motion for summary judgment filed by plaintiff [doc. #26] be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 5th day of October, 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

15