| | |
|---|---|
| LEE LUCAS | CIVIL ACTION No. 16-CV-0425-P |
| VERSUS | JUDGE ELIZABETH FOOTE |
| JERRY GOODWIN, ET AL. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Plaintiff Lee Lucas ("Lucas") brings this action under 42 U.S.C. § 1983, alleging that while incarcerated at David Wade Correctional Center ("DWCC"), he was deprived of dental care in violation of the Eighth Amendment. [Record Document 1]. Before the Court is the Magistrate Judge's Report and Recommendation on three pending motions for summary judgment. [Record Document 47]. Lucas has filed one motion, Defendant Daniel Moore ("Moore") has filed a second motion, and Defendants Jerry Goodwin ("Goodwin"), James LeBlanc ("LeBlanc"), Paula Millwee ("Millwee"), Robert Rachal ("Rachal"), and Rahman Singh ("Singh") (collectively, "State Defendants") have filed a third motion. [Record Documents 26, 38, and 40]. Defendants have filed oppositions to Lucas's motion. [Record Documents 34–35].

For the reasons discussed below, the Report and Recommendation [Record Document 47] is **ADOPTED IN PART** and **REJECTED IN PART**. The Court **ADOPTS** the report's findings that Lucas properly exhausted his administrative remedies against Moore, that neither Moore nor LeBlanc violated Lucas's Eighth Amendment rights, that Lucas's motion for summary judgment should be denied, and that Lucas's injunctive relief claims against Millwee,

Rachal, and Goodwin are moot. The Court **REJECTS** the report's findings that Millwee, Rachal, Goodwin, and Singh did not violate Plaintiff's Eighth Amendment rights, that they are entitled to qualified immunity, and that Lucas's claim against Singh for injunctive relief is moot.

Lucas's motion for summary judgment [Record Document 26] is **DENIED**. Moore's motion for summary judgment [Record Document 38] is **GRANTED**. The State Defendants' motion for summary judgment [Record Document 40] is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** as to LeBlanc on all claims and as to Millwee, Rachal, Goodwin, and Singh in their official capacities on the issue of monetary damages. Summary judgment is **DENIED** in all other respects. Lucas's claim for injunctive relief against Millwee, Rachal, and Goodwin is **DENIED AS MOOT**.

## I. Background

### A. Factual Background

Lucas is currently incarcerated at the Louisiana State Penitentiary ("LSP"). [Record Document 46-1 at 3]. Moore is a dentist at DWCC who regularly treated Lucas while he was incarcerated there. [Record Document 1-2 at 2]. Millwee is a registered nurse at DWCC. [Record Documents 1-2 at 2 and 46-1 at 1]. Rachal is the assistant warden at DWCC overseeing medical and dental care. [Record Document 1-2 at 2]. Goodwin is the warden at DWCC. [*Id.*]. Singh was the medical director for the Louisiana Department of Public Safety and Corrections ("DOC"), the state entity that operates DWCC. [*Id.* at 3]. Finally, LeBlanc is the DOC secretary. [*Id.*].

When Plaintiff entered DWCC, he had a long span anterior bridge in the upper left side of his mouth; tooth #12 is an abutment for that bridge. [Record Document 46-1 at 9, 21]. As

described more fully in the Report and Recommendation, Moore saw Lucas multiple times in 2012 and 2013. [Record Document 47 at 1–3]. After initially diagnosing Lucas's dental pain as sinusitis, Moore upgraded the diagnosis in June 2013 to a fistula at tooth #11 or #12 and prescribed an antibiotic. [*Id.* at 2–3]. Lucas made no further sick calls requesting dental care until 2015. [Record Document 46-1 at 2]. On March 24, 2015, Lucas reported "extreme pain" and was seen by a DWCC nurse, who referred him for an appointment with Moore. [Record Documents 1-2 at 4 and 46-1 at 2, 15]. Moore examined Lucas on April 30, 2015, prescribed ibuprofin, dramamine, and amoxicillin, and referred him to the Oral Surgery Clinic at University Health-Shreveport ("UH-S"). [Record Documents 1-2 at 4 and 46-1 at 2–3, 16–19].

Moore's diagnosis and specific directions to UH-S are somewhat unclear from the record. He appears to have concluded that at least one tooth (#11 or #12) was non-vital. [Record Document 46-1 at 19]. He noted that Lucas "needs t[ooth] #11 root canal therapy, which is a procedure that DWCC does not have the resources to provide" and "recommend[ed]" that Lucas be taken to a clinic offering the procedure. [*Id.* at 17]. However, beside the recommendation that Lucas be taken to an outside clinic, Moore wrote "if needed." [*Id.*]. On the referral form itself, he wrote that Lucas "need[s] retrofill," but also, "Please evaluate . . . for apico-ectomy, non vital maxillary teeth on Bridge UL Maxilla." [*Id.* at 19]. In later notes, Moore indicated that he "had requested" that UH-S "perform [the] retro-fill procedure," but also that Lucas had been "referred to see if periapical retrofill procedure can be done." [*Id.* at 20, 22]. Thus, it is unclear from the record whether the external referral was for a particular therapy that DWCC could not perform on-site but that Moore believed was indicated or whether the referral

was for an evaluation of whether a root canal, periapical retrofill, or an apicoectomy were appropriate treatments for Lucas.

On June 26, 2015, Lucas was seen at UH-S. [Record Documents 1-2 at 4 and 46-1 at 3]. Although UH-S offered extraction of the non-vital tooth, Lucas refused this treatment, expressing to the clinic dentist that he desired a root canal. [Record Document 46-1 at 29]. On the form used by DWCC to communicate between outside medical providers and prison staff, the UH-S dentist indicated that the recommended treatment was "dentist for RCT #12." [*Id.* at 25]. In September 2015, Moore saw Lucas again and again referred him to UH-S, noting that the purpose of the proposed periapical retrofill was "to save the long span bridge which [the affected teeth] are a part of." [*Id.* at 3, 20]. In his orders, Moore clearly indicated that Lucas was not being sent for extraction and that Moore's intention was for Lucas to be evaluated for his suitability as a candidate for periapical retrofill. [*Id.* at 20]. This second referral was never executed because UH-S alerted DWCC by letter that it lacked the "capabilities to perform root canal therapy or any retrofill procedures." [*Id.* at 21]. Rather than indicating that UH-S found Lucas an unsuitable candidate for these treatments, the letter only states that UH-S cannot perform them. [*Id.*]. On October 30, 2015, Moore again saw Lucas, noted that he had "refused extraction at UH-S," and prescribed an antibiotic and mouth rinse to treat the fistula. [*Id.* at 22]. Five weeks later, Lucas was seen by a different DWCC dentist, who also noted that Lucas "refused ext. #12 at UH-S." [*Id.* at 23]. It is unclear from the record whether Moore or this other dentist offered Lucas extraction or whether Lucas only refused extraction when offered by UH-S. Throughout this time, Lucas was in "constant and continuous pain." [Record Document

1-2 at 5].

In an attempt to investigate his situation, Lucas wrote several letters to Moore. [Record Document 1-2 at 4 and 26-3 at 21–23]. Moore replied to one, indicating that he relied on UH-S's diagnosis that Lucas had a fistula between tooth #11 and tooth #12. [Record Document 26-3 at 23]. Some evidence indicates that Moore may have told Lucas that Moore would suggest to Millwee that Lucas be transferred to a different DOC facility so that his dental needs could be met. [*Id.* at 22]. It is unclear whether Moore made this suggestion to Millwee, but Lucas was transferred to LSP in April 2016; the reason for the transfer does not appear in the record. [Record Document 46-1 at 3].[1]

### B. Procedural Background

Lucas filed a complaint seeking compensatory and punitive damages against Defendants in their individual and official capacities and an injunction requiring his immediate transfer to LSP and the provision of dental care recommended by an independent dentist. [Record Document 1-2 at 8–9]. Lucas subsequently moved for a preliminary injunction on the same

---

[1] Moore points out that Lucas was scheduled for a root canal following his transfer to LSP; he refused the procedure after being told that it would damage his tooth's ceramic crown. [Record Documents 38-1 at 6–7 and 38-3 at 201–04]. Lucas filed an Administrative Review Procedure request to be allowed to hire an independent dentist to provide treatment at Lucas's expense. [Record Document 38-3 at 203]. LSP officials and dentists are not defendants in the present suit. Therefore, procedures offered at LSP are not relevant to the Court's determination of the instant motions. Moreover, to the extent that offering root canal therapy at LSP in 2016 indicates that the State Defendants were not deliberately indifferent, the availability of this treatment at a DOC facility other than DWCC would support Lucas's contention that they were deliberately indifferent by refusing to provide this treatment in 2015 while Lucas was in pain. *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (citing *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006)).

grounds, [Record Document 3]; this motion was denied as moot as a result of Lucas's transfer,[2] [Record Document 8]. Upon initial review, the Magistrate Judge recommended dismissal of Lucas's complaint as frivolous. [Record Document 7]. The Court declined to adopt this recommendation. [Record Document 8]. Moore then moved for dismissal for failure to follow the procedures mandated by the Louisiana Medical Malpractice Act, [Record Document 15]; the Court denied the motion, accepting the Magistrate Judge's finding that Lucas alleged Moore's deliberate indifference in violation of the Eighth Amendment, not his medical negligence, [Record Documents 21 and 25].

## C. The Instant Motions

In his motion, Lucas argues that he is entitled to summary judgment because the "defendants' failure to provide prompt, reasonable, and adequate dental care to his serious dental needs, constituted deliberate indifference" and because the State Defendants failed to correct the alleged denial of adequate dental treatment through the Administrative Remedy Procedures ("ARP") process. [Record Document 26-1 at 2–4]. Moore argues that Lucas failed to exhaust his administrative remedies and that the dental care Moore provided was not inadequate and did not evince deliberate indifference. [Record Document 38 at 2–3]. The State Defendants assert that they are entitled to qualified immunity. [Record Document 40 at 2]. Millwee argues that she was not deliberately indifferent and therefore committed no constitutional violation. [Record Document 40-2 at 8]. Although framed in terms of qualified immunity, Goodwin, Rachal, Singh, and LeBlanc argue that Lucas's allegations do not establish

---

[2] Although the motion for a preliminary injunction was denied as moot, the Court did not at that time dismiss the claim for injunctive relief found in the complaint.

supervisory liability under § 1983. [*Id.* at 10–11].

## II. Law and Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not

---

[3] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

### B. Official Capacity Claims

Lucas has sued the State Defendants in their individual and official capacities, and they have moved for summary judgment on the grounds that a prayer for monetary damages against an official capacity defendant fails to state a claim. [Record Documents 1-2 at 3 and 40 at 1]. Absent a waiver of sovereign immunity, monetary damages are unavailable against state actors sued in their official capacities. *Ganther v. Ingle*, 75 F.3d 207, 209–10 (5th Cir. 1996) (per curiam) (citing *Ex Parte Young*, 209 U.S. 123, 149 (1908)). Louisiana has not waived its sovereign immunity. La. Stat. Ann. § 13:5106 (2012). Thus, Lucas cannot succeed on his claim for monetary damages against the State Defendants in their official capacities. *See Ganther*, 75 F.3d at 209. As a result, summary judgment is granted to the State Defendants and denied to Lucas on his official capacity claims for monetary damages.[4]

---

[4] Because sovereign immunity bars this claim, the dismissal must be without prejudice. *See Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996).

## C. Eighth Amendment Standards for Medical Treatment

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII; *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976) ("[W]e have held repugnant to the Eighth Amendment punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society." (internal quotation marks omitted)). Although the amendment "does not, by its precise words, mandate a certain level of medical care for prisoners[,] the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive adequate . . . medical care." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted). To establish a violation of her Eighth Amendment rights, a prisoner must show that officials or medical staff acted with "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 104. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Thus, a successful Eighth Amendment claim requires: (1) that the plaintiff have had a serious medical need that exposed her to a substantial risk of serious harm, *Lawson v. Dall. Cty.*, 286 F.3d 257, 262 (5th Cir. 2002); and (2) that a prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference," *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Moreover, because deliberate indifference requires conscious disregard, mere negligence or medical malpractice does not violate the Eighth Amendment. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

If prison officials or doctors act with deliberate indifference in delaying treatment,

additional injuries caused by the delay violate the Eighth Amendment if they rise to the level of "substantial harm." *Easter*, 467 F.3d at 463. Likewise, "pain suffered during a delay in treatment" for a serious medical need is actionable under the Eighth Amendment. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017). Nevertheless, a prisoner's disagreement with the selection of treatments offered does not establish an Eighth Amendment violation as long as those treatments are medically appropriate. *Easter*, 467 F.3d at 464; *see Gobert*, 463 F.3d at 349 n.32 ("Considering and failing to follow the recommendations of another treating physician does not amount to deliberate indifference."). To establish that they did not act with deliberate indifference, prison officials or medical staff may introduce evidence of "[m]edical records of sick calls, examinations, diagnoses, and medications." *Gobert*, 463 F.3d at 346 n.24.

### D. Defendants' Deliberate Indifference

#### 1. Moore

Moore argues that he is entitled to summary judgment because he was not deliberately indifferent to Lucas's dental needs.[5] [Record Document 38 at 2]. In support, Moore points out that he provided treatment each time he saw Lucas and that he referred Lucas to UH-S when Lucas may have needed treatment that DWCC could not provide on-site. [Record Document 38-1 at 5–8]. Although Moore argues that Lucas "refused the recommended care of extraction" and "contests that a root canal was the appropriate therapy," [Record Documents 37 at 2 and 38-1 at 9], the record is not unequivocal on this issue. No physician, including Moore, has

---

[5] Moore also argues that Lucas failed to exhaust his administrative remedies. [Record Document 38-1 at 9–12]. The Court adopts the Magistrate Judge's finding to the contrary. [Record Document 47 at 7–9].

asserted via affidavit that extraction was an appropriate treatment for Lucas, leaving the Court to determine this critical fact from the ambiguous notations in Lucas's medical record.

There are two plausible readings of that record. In one, Moore determined that a procedure that could not be performed at DWCC (a root canal, an apicoectomy, or periapical retrofill) was needed. DWCC then failed to ensure that Lucas received this needed procedure after UH-S refused to perform it on the grounds that UH-S lacked the capability to do so. Alternately, the Court could infer that Moore was uncertain as to which procedure was medically appropriate and referred Lucas to UH-S for a specialist opinion. UH-S then determined that extraction was appropriate, and Moore offered extraction, which Lucas refused.

Although failure to provide adequate dental care may constitute an Eighth Amendment violation, *see, e.g., Harris v. Hegmann*, 198 F.3d 153, 159–60 (5th Cir. 1999); *Baughman v. Garcia*, 254 F. Supp. 3d 848, 874–78 (S.D. Tex. 2017), under either reading of the record, Moore was not deliberately indifferent to Lucas's dental needs. He never refused to treat Lucas. Under the first reading of the facts, once it became apparent that Lucas needed treatment that Moore could not provide at DWCC, Moore referred Lucas to a clinic that might be able to provide the treatment. [Record Document 46-1 at 17, 19]. When UH-S failed to do so, Moore attempted to refer Lucas again. [*Id.* at 20]. Because no record evidence suggests that any of the procedures could be performed at DWCC, Moore cannot have been deliberately indifferent by failing to perform the procedures himself. Under the alternate reading, Moore was uncertain as to the correct treatment and acted appropriately by referring Lucas to UH-S and then following that clinic's recommendation. In either case, this record of treatment is inconsistent with a finding that Moore acted with deliberate indifference. *See Fuller v. Harris Cty.*, 294 F. App'x 167, 169 (5th

11

Cir. 2008) (refusing to find deliberate indifference when "medical records show that [the plaintiff] was seen numerous times in the jail's infirmary following his surgery, and that his post-surgical infection was both noted and treated with antibiotics"). Therefore, summary judgment is granted to Moore and denied to Lucas.

### 2. Millwee

Although framing her defense in terms of qualified immunity, Millwee actually argues that she is entitled to summary judgment because she was not deliberately indifferent to Lucas's dental needs. [Record Document 40-2 at 7–8]. To counter Lucas's allegations that Millwee "was aware of [his] serious dental needs, and failed to have adequate care provided, failed to have adequate staffing in the dental clinic, and failed to have [him] transferred to a facility that provided such care," [Record Document 1-2 at 7], Millwee asserts via affidavit that she did not deny Lucas treatment for dental pain and that she was not authorized to hire staff or to transfer him to another DOC facility, [Record Document 46-1 at 4]. Although it is not entirely clear what treatment Millwee provided to Lucas, she asserts that her "duties require [her] to provide medical care and treatment to offenders currently confined at DWCC." [*Id.* at 1].

To be entitled to summary judgment, Millwee must produce evidence showing that there is no genuine dispute of material fact as to at least one essential element of Lucas's deliberate indifference claim.[6] At trial, Lucas must prove that he had a serious medical need, that appropriate treatment was not provided, and that Millwee was both aware of Lucas's condition

---

[6] While Millwee could also obtain summary judgment by demonstrating the absence of evidentiary support for an essential element of Lucas's claim, *see Celotex*, 477 U.S. at 322–23, her motion relies on her affidavit and Lucas's medical record to affirmatively demonstrate that she was not deliberately indifferent.

and inferred that failure to provide the correct treatment would pose a "substantial risk of serious harm." *Smith*, 158 F.3d at 912; *see Lawson*, 286 F.3d at 262.

Because "[a] serious medical need is one for which treatment has been recommended . . . ," *Gobert*, 463 F.3d at 345 n.12, the medical records attached to Millwee's affidavit indicate the existence of a serious medical need by 2015 when Moore noted that Lucas "needs t[ooth] #11, root canal therapy," [Record Document 46-1 at 17].[7] While Millwee apparently argues that by offering extraction, DWCC provided appropriate care, [Record Document 40-2 at 8],[8] the record could, as discussed above, be read to indicate that extraction was not the recommended treatment, merely the only one that could be performed at DWCC or UH-S, [Record Document 46-1 at 21]. Moreover, the record does not conclusively demonstrate that DWCC offered extraction once Lucas returned from UH-S; the records from

---

[7] It appears that UH-S ultimately diagnosed the offending tooth as tooth #12. [Record Document 46-1 at 21]. Nevertheless, because a particular treatment had been recommended, Lucas had a "serious medical need" once Moore recommended a root canal of tooth #11. *Gobert*, 463 F.3d at 345 n.12.

[8] The Magistrate Judge has cited nonbinding authority that "offering tooth extraction in lieu of a root canal does not violate a prisoner's Eighth Amendment rights." [Record Document 47 at 11]. However, the cited cases are distinguishable because, taking the facts and inferences in the light most favorable to Lucas, Moore had prescribed a treatment other than extraction and extraction would result in the loss of Lucas's bridgework. Notably, in the cited cases dentists had determined that extraction was an appropriate procedure whereas the Court here is confronted with an ambiguous medical record. *See Mathews v. Raemisch*, 513 F. App'x 605, 607 (7th Cir. 2013) (holding that denying a root canal is not deliberate indifference when the record contains "undisputed affidavits from doctors stating that a root canal is not medically necessary and that an available tooth extraction will treat [the plaintiff's] problem"); *Ciaprazi v. Jacobson*, No. 13CIV4813PACKNF, 2016 WL 4619267, at *4 & n.3 (S.D.N.Y. Sept. 6, 2016) (finding that offering only extraction is constitutionally permissible where doctors declared that a root canal was not clinically indicated); *Galindo v. Cate*, No. 1:11-CV-00023-DLB PC, 2011 WL 6100623, at *2–3 (E.D. Cal. Dec. 6, 2011) (finding that failing to offer a root canal did not constitute deliberate indifference when a prison dentist identified extraction as an appropriate remedy).

the October and December dental visits can be read as simply noting that Lucas had refused extraction at UH-S under the impression that Moore had prescribed an alternative therapy. [*Id.* at 22–23].

Hence, if Millwee had the authority to ensure that Lucas received the prescribed treatment, then she failed to provide appropriate medical treatment. Millwee's affidavit does not indicate that she was unaware of the problems with Lucas's tooth, and a letter from Lucas to Millwee suggests that she knew that he was in pain at least from late June 2015. [Record Document 43-4 at 12]. Her affidavit indicates nothing about her subjective knowledge of the risks posed to Lucas's dental health by not providing a root canal, an apicoectomy, or periapical retrofill. She has not sworn that she did not draw the inference that Lucas's dental work could be placed in jeopardy by failing to provide one of the treatments recommended by Moore. Moreover, she has not pointed to the absence of these elements elsewhere in the record.

While Millwee has asserted that she lacked the authority to order transfers or hire additional staff, she has not described the treatments she did have the authority to authorize. In particular, she has not asserted that she did not have the authority to refer Lucas to an outside clinic other than UH-S that would be able to perform an apicoectomy, a root canal, or periapical retrofill. Because Millwee bears the initial burden of production at summary judgment and because the affidavit and medical records, when viewed in the light most favorable to Lucas, do not establish the absence of genuine factual disputes, Millwee has failed to carry her burden to show her entitlement to judgment as a matter of law on the issue of whether she was deliberately indifferent to Lucas's dental needs. However, the uncertainty regarding which treatment Moore prescribed means that the Court must also deny Lucas's motion for summary judgment against

Millwee.

### 3. Rachal, Goodwin, and Singh

The State Defendants argue that they are not liable because Lucas has not alleged a causal connection between his injuries and their failure to act. [Record Document 40 at 10–11]. Although the deliberate indifference of each defendant must be analyzed separately, *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999), Rachal, Goodwin, and Singh are similarly positioned for purposes of the instant motions. None of them provided direct medical care to Lucas. Hence, liability can only attach to these defendants in their supervisory capacities.

Section 1983 does not impose supervisory liability under a theory of respondeat superior. *See Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Rather, officials must have personally acted to deny a constitutional or statutory right. *Id.* To establish supervisory liability, a § 1983 plaintiff can proceed under two theories. First, she can show that a supervisor "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (internal citations and quotation marks omitted). Alternately, she can show that the supervisor was deliberately indifferent in light of the supervisor's actual knowledge of the plaintiff's condition. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994)). Applied to the medical context, this form of supervisory liability requires a plaintiff to prove that (1) "officials learned of facts or a pattern of . . . behavior by a subordinate" indicating that appropriate care was not being provided; (2) "officials demonstrated deliberate indifference . . . by failing to take action that was obviously necessary" to provide the medical care; and (3) "the officials' failure

caused a constitutional injury." *Id.* (citing *Doe*, 15 F.3d at 454)).

Rachal, Goodwin, and Singh have provided only Lucas's medical records, authenticated by Millwee's affidavit, in support of their motion. [Record Document 46-1]. Taken in the light most favorable to Lucas, these records, while indicating that Lucas was seen repeatedly by dental staff at DWCC, do not establish an absence of support for an essential element of Lucas's claim. Nothing in the record controverts Lucas's attestation that these three defendants were aware of his dental needs. [Record Document 1-2 at 6–8]. In particular, he stated that he "has spoken to defendant Goodwin about his dental needs and has also had representatives call and speak with Goodwin" and that his "family members have spoken with defendant Singh." [*Id.* at 6, 8]. Rachal's subjective awareness of Lucas's dental pain is suggested by his rejection of two ARPs Lucas filed to contest DWCC's refusal to provide him with a root canal. [Record Documents 43-4 at 7 and 43-5 at 6].[9] In the first ARP that Rachal denied, Lucas expressly indicated that he had been seen at UH-S, which did not perform the "required procedure," and that he continued to be in "extreme pain" as a result of a "fistula . . . that constantly bursts from infections." [Record Document 43-4 at 1–2]. Thus, the record does not establish that Rachal, Goodwin, and

---

[9] Although both of the ARP denials state that Lucas's complaint had been "reviewed with the appropriate staff," there is no indication of whether those staff members included Moore or the dentists at UH-S. [Record Documents 43-4 at 7 and 43-5 at 6]. Given that Rachal quotes extensively from the medical record, it is unclear if he used any information other than that contained in the record's ambiguous notations. [Record Documents 43-4 at 7 and 43-5 at 6]. For instance, the second ARP response states that UH-S "reiterated that [extraction] was the treatment for your problem" and that UH-S had deemed extraction "necessary." [Record Document 43-5 at 6]. However, the basis for this statement appears to be the letter sent to DWCC by UH-S. [Record Document 46-1 at 21]. Given the different possible interpretations of this letter, it is unclear on what basis Rachal reached the conclusion that extraction had been determined to be "<u>the</u> treatment" for Lucas's dental condition. [Record Document 43-5 at 6 (emphasis added)].

Singh were unaware of Lucas's dental pain and the recommended treatment.

Rachal, Goodwin, and Singh could also obtain summary judgment by showing that there is no genuine factual dispute that they did not "fail[] to take action that was obviously necessary." *Alton*, 168 F.3d at 200. As discussed above, there is a factual dispute regarding which procedure or procedures Moore and UH-S prescribed. If these defendants did not use their supervisory authority to ensure that Lucas was treated at a facility capable of performing a procedure prescribed by DWCC's own dentist, then they would have been deliberately indifferent to Lucas's medical needs. Resolving this question requires determining whether Moore did, in fact, prescribe a treatment other than extraction, whether UH-S prescribed extraction or simply offered it because UH-S could offer no other treatment, and whether these defendants were actually aware of Lucas's condition. Hence, issues of material fact preclude summary judgment on this element of Lucas's claim.

Finally, these three defendants could obtain summary judgment if their failure to take Lucas to a location where he could have a root canal, an apicoectomy, or periapical retrofill performed did not cause him a "constitutional injury." *Id.* Ongoing pain that could be ameliorated with proper treatment is a constitutional injury. *See Easter*, 467 F.3d at 464 (holding that allegations that a prison nurse failed to provide an inmate with prescribed nitroglycerin despite repeated complaints of chest pain "meets the 'deliberate indifference' threshold"). Lucas has attested that he suffered pain as a result of receiving inadequate dental care. [Record Document 1-2 at 5]. Moreover, the record can be read to suggest that failure to intervene immediately upon UH-S's inability to perform the prescribed procedure caused further damage to Lucas's teeth and that accepting extraction would have caused the loss of Lucas's bridgework.

As a result, these defendants have not established that Lucas did not suffer an injury by not being transported to a location to perform the treatment that the record, when viewed in the light most favorable to Lucas, indicates that Moore prescribed. The Court makes no finding on whether Lucas will ultimately prevail at trial where he will have the burden to prove the subjective deliberate indifference of each of these defendants by a preponderance of the evidence. The Court simply finds that Rachal, Goodwin, and Singh have not shown the absence of a genuine factual dispute regarding an essential element of Lucas's claim. The existence of these unresolved questions also requires the Court to deny Lucas's motion for summary judgment against these three defendants.

### 4. LeBlanc

Although Lucas alleges that LeBlanc was "aware of plaintiff's serious dental needs," [Record Document 1-2 at 7], there is no record evidence providing any support for this conclusory assertion. Without subjective awareness of Lucas's condition, LeBlanc could not have been deliberately indifferent. While deliberate indifference can also be shown in the creation and maintenance of a policy that is "itself a repudiation of constitutional rights," *Thompkins*, 828 F.2d at 304, Lucas does not allege that LeBlanc is liable in his role as a policymaker for the DOC. Therefore, the Court grants LeBlanc's motion for summary judgment and denies Lucas's cross-motion as to LeBlanc.

### E. Qualified Immunity of Millwee, Rachal, Goodwin, and Singh

Millwee, Rachal, Goodwin (collectively, the "DWCC Defendants"), and Singh argue that they are entitled to qualified immunity. [Record Document 40 at 5–11]. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be entitled to qualified immunity, an official who has violated a clearly established constitutional or statutory right must have done so through "conduct that was objectively reasonable under the law at the time of the incident." *Michalik v. Herman*, 422 F.3d 252, 257–58 (5th Cir. 2005). A clearly established right is one whose outline is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Nevertheless, finding a right clearly established "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). Thus, even in "novel factual situations" a right may be clearly established if precedent gives defendants a "fair warning that their alleged treatment . . . was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). A defendant's conduct is objectively unreasonable only if "*all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated" the plaintiff's rights. *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001). A court may evaluate the reasonableness of an official's conduct in light of clearly established law and the existence of a statutory or constitutional violation in either order. *Pearson*, 555 U.S. at 236.

The DWCC Defendants and Singh assert qualified immunity based on their claim that they did not commit any constitutional violations. [Record Document 40-2 at 7–8, 11]. However, as discussed above, they have failed to meet their summary judgment burden to show the absence of evidentiary support for at least one of the essential elements of Lucas's deliberate

indifference claim. Therefore, these defendants can only be entitled to qualified immunity if their refusal to ensure that Lucas was taken to a facility providing the services recommended by Moore was not unreasonable in light of clearly established law. *See Michalik*, 422 F.3d at 258.

Although the "objective reasonableness of [an] official's act" for qualified immunity purposes is a question of law appropriate for summary judgment, *see Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994), assessing the reasonableness of the conduct of Singh and the DWCC Defendants requires determining whether Moore prescribed a treatment other than extraction. If he did, then they would have "failed to follow a prescribed course of treatment" and thus would have acted unreasonably. *Easter*, 467 F.3d at 464 (citing *Estelle*, 429 U.S. at 104–05). On the other hand, if Moore merely sought the opinion of an outside expert, then Singh and the DWCC Defendants would have appropriately treated Lucas's concern by responding to their dentist's need for specialist insight. Therefore, an unresolved factual issue prevents the Court from determining whether their conduct was objectively reasonable. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (per curiam) (finding summary judgment improper when the "objectively reasonable basis" for officials' conduct "cannot be sorted out without settling on a coherent view of what happened in the first place"); *Baughman*, 254 F. Supp. 3d at 878 (denying summary judgment when the case presented "unresolved fact issues about whether [the plaintiff's's] decayed teeth were beyond saving with a standard filling such that extraction could be considered appropriate treatment").

Therefore, for Singh and the DWCC Defendants to be entitled to summary judgment on qualified immunity, refusing to provide the treatment recommended by a prison's own doctor must not have been an Eighth Amendment violation under clearly established law. Prison

officials who "intentionally deny[] or delay[] access to medical care or [who] intentionally interfer[e] with the treatment once prescribed" act with deliberate indifference. *Estelle*, 429 U.S. at 104–05. Moreover, it is "clearly established that offering extraction only instead of a filling for tooth decay can violate the Eighth Amendment if extraction is not medically necessary at that time." *Baughman*, 254 F. Supp. 3d at 876 (citing *Chance v. Armstrong*, 143 F.3d 698, 703–04 (2d Cir. 1998)). While a prison doctor "[c]onsidering and failing to follow the recommendations of another treating physician does not amount to deliberate indifference," *Gobert*, 463 F.3d at 349 n.32, prison officials may not replace one prescribed course of treatment with another unless the second treatment is prescribed by a medical professional. Taking the facts in the light most favorable to Lucas, Moore had prescribed root canal therapy, an apicoectomy, or periapical retrofill; these defendants then refused to provide Lucas with an opportunity to obtain these procedures while he was at DWCC. Therefore, making the inferences in Lucas's favor, Singh and the DWCC Defendants failed to implement the treatment prescribed by DWCC's dentist. Because clearly established law required them to provide the treatment Moore prescribed in the absence of a clear alternative prescribed by a different dentist, they are not entitled to qualified immunity. Therefore, the Court denies summary judgment on this issue.

## III. <u>Conclusion</u>

For the reasons explained above, the Report and Recommendation [Record Document 47] is **ADOPTED IN PART** and **REJECTED IN PART**. The Court **ADOPTS** the following findings: (1) Lucas properly exhausted his administrative remedies against Moore; (2) neither Moore nor LeBlanc violated Lucas's Eighth Amendment rights; (3) Lucas's motion for summary judgment should be denied; and (4) Lucas's injunctive relief claims against Millwee,

Rachal, and Goodwin are moot. The Court **REJECTS** the report's findings that Millwee, Rachal, Goodwin, and Singh did not violate Plaintiff's Eighth Amendment rights, that they are entitled to qualified immunity, and that Lucas's claim against Singh for injunctive relief is moot.

Lucas's motion for summary judgment [Record Document 26] is **DENIED**. Moore's motion for summary judgment [Record Document 38] is **GRANTED**. The State Defendants' motion for summary judgment [Record Document 40] is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** as to LeBlanc on all claims and as to Millwee, Rachal, Goodwin, and Singh in their official capacities on the issue of damages. Summary judgment is **DENIED** in all other respects; the claims against Singh in his official capacity for injunctive relief and against Singh, Goodwin, Rachal, and Millwee in their individual capacities for damages survive summary judgment.

**IT IS ORDERED** that all claims against Moore and LeBlanc are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all claims for monetary damages against Defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the claims for injunctive relief against Goodwin, Rachal, and Millwee are **DISMISSED WITHOUT PREJUDICE AS MOOT**.

A separate order will issue instructing the parties as to pretrial procedures.

THUS DONE AND SIGNED in Shreveport, Louisiana, this _14_ day of _March_, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE